IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DELVON BROWN,** **#Y49809,** | |
| **Plaintiff,** | Case No. 24-cv-00477-SPM |
| v. | |
| **NURSE ANGIE,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Leave to Amend the Complaint filed by pro se Plaintiff Delvon Brown. (Doc. 23). Because not all the defendants have been identified and served, Plaintiff may amend as a matter of course. *See* FED. R. CIV. P. 15(a). Accordingly, the motion is **GRANTED.** The Clerk will be directed to file the proposed amended complaint as the "First Amended Complaint" on the docket. The Court must still screen the First Amended Complaint in accordance with 28 U.S.C. §1915A. Pursuant to Section 1915A, any portion of the First Amended Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### FIRST AMENDED COMPLAINT

Plaintiff claims that on September 28, 2023, at Menard Correctional Center (Menard), he was assaulted by Correctional Officer Rayford, a member of the tactical team. (Doc. 23, p. 1). At the time he was physical attacked, Plaintiff's hands were cuffed behind his back. Plaintiff states that Rayford slammed his face repeatedly against a brick wall knocking his teeth out of his mouth. (*Id.*). Plaintiff did not receive proper medical attention, and from this point going forward, Plaintiff

"began ingesting toxins under the roots of the teeth." (*Id.* at p. 2). Plaintiff asserts that these toxins can be deadly and cause death if not caught and treated. (*Id.*).

Later, on November 12, 2023, while housed in East House, Plaintiff continued to suffer from his injuries inflicted by Correctional Officer Rayford. (Doc. 23, p. 1). He was throwing up blood and losing a lot of weight "from ingesting the poison toxins" from the roots of his gums. Plaintiff states that he had previously submitted six call slips requesting medical treatment, but his requests went ignored. (*Id.*).

Because he complained about the lack of medical care he was receiving, Plaintiff was placed in segregation in North Two Cell House, cell #645, in poor conditions. (Doc. 23, p. 3). He did not have bedding, clothes, books, a pen, paper, or mail for three days. At times, Plaintiff was not fed for days and did not have access to the mail and was prohibited from using the phone. He states that in segregation inmates are often sprayed with mace and not able to wash the mace from their bodies because staff will turn off the water to the cells. (*Id.*).

While in cell #645, Plaintiff continued to throw up blood. (Doc. 23, p. 3). Correctional Officer Edinger saw the blood on the floor of Plaintiff's cell. Edinger told Plaintiff that he would "get someone," but he never came back. Plaintiff also told Nurse Angie, as she was passing out medication, that he was throwing up blood and was feeling ill. Nurse Angie said she would come back to his cell, but she did not return. (*Id.*). Plaintiff asserts that Endinger and Angie did not seek medical assistance for him in an effort to coverup the excessive force used against him. (*Id.* at p. 4). He claims that this "vendetta behavior" continued six days until he was moved to cell #843. (*Id.* at 4). Cell #843 had a solid steel door, and Plaintiff states this cell provided an environment of greater isolation. (*Id.*).

Once Plaintiff was moved to the new cell, he continued to write grievances seeking medical attention, but he did not receive a response. (Doc. 23, p. 4). Plaintiff gave three sick call slips to

Nurse Morgan. Plaintiff asked her if he was going to be seen by someone because he was in pain, and she responded, "I don't make those decisions I don't even read the sick calls." Plaintiff asserts that nurses do in fact have the authority to immediately take an inmate who is throwing up blood to the health care unit. (*Id.*).

On February 10, 2024, Plaintiff woke up throwing up blood, and he alerted his gallery officer, Ms. Ahring. (Doc. 23, p. 4). He was taken to the "R&C" building and placed in a cell with Sergeant Maue. Maue began aggressively asking Plaintiff why he pressed the emergency button for medical attention. Plaintiff showed Maue the blood in his paper cup and on the wall and floor of his cell. Maue said, "I see a lot of blood everywhere." Plaintiff explained that he had not received medical care after being assaulted by the tactical team in September. He told Maue that he was in a lot of pain and felt like he was slowly dying. Maue responded, "Maybe you is," and walked away from his cell without helping him obtain medical treatment.

On May 16, 2024, Plaintiff personally spoke to Warden Wills and told him about "all the wrong done to him" on September 28, 2023, and the subsequent retaliation. (Doc. 23, p. 5). Wills told Plaintiff that he would "look into it."

At some point in time, Plaintiff was taken to the medical unit and told by a doctor that there "was something wrong with his gut and throat." (Doc. 23, p. 2).

## PRELIMINARY DISMISSALS

The Court first dismisses Plaintiff's claims regarding the grievance process and the mishandling of his grievances. (Doc. 23, p. 2). Plaintiff states that the grievance process at Menard is "contaminated." Grievances are not responded to within sixty days, as required, and it can take four to six months to receive a response to a grievance. Plaintiff states that once an inmate receives the untimely response, the response is often back dated. (*Id.*). Plaintiff asserts that he has been unable to submit grievances because security staff have claimed for months that an officer broke

the grievance box, and it has never been replaced. (*Id.* at p. 3). Other than the grievance box, there is no alternative method for submitting grievances. Plaintiff claims he has "no remedy of law." (*Id.*).

These allegations fail to state a constitutional claim. Grievance procedures for those in custody "are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause...." *Owens v. Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011). The Constitution requires no procedure at all, and the failure of prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Additionally, Plaintiff is currently litigating two civil cases in this District, indicating that Defendants have "not infringed his First Amendment right to petition the government for a redress of grievances." *Brewer v. Ray*, 181 F. App'x 563, 565 (7th Cir. 2006) (quoting *Antonelli v. Sheahan*, 81 F. 3d 1422, 1430 (7th Cir. 1996)).

Neither can Plaintiff proceed on a constitutional claim against grievance officials Pierce, Loyd, Ramsey, and Hargis. (Doc. 23, p. 3, 5). Plaintiff claims that these individuals "knew or should of known [his] severe illness and sickness was a result of excessive force" and that he was being denied medical care because the of the grievances he filed. Because the only involvement of Pierce, Loyd, Ramsey, and Hargis in the alleged constitutional deprivations is their review and denial or mishandling of Plaintiff's grievances, he has failed to state a claim against them. It has long been held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to a violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (explaining that "[o]nly persons who cause or participate in the violations are responsible"). Mere receipt of grievances from a prisoner is insufficient to establish that a prison staff member was personally involved in any deficient medical care provided to the prisoner. *See Owens*, 635 F.3d at 953

("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Any claims against Nursing Supervisor Tara McCoy are also dismissed. (Doc. 23, p. 4). Plaintiff asserts that McCoy "turns a blind eye condoning the vicious wrongs her staff do as no disciplinary actions are ever impose[d] on them nurses by silent consent of any constitutional violation." Plaintiff references that sick call slips he gave to Nurse Morgan that did not result in a medical appointment. (*Id.* at p. 5). Plaintiff's allegations against McCoy are conclusory, and from the facts asserted, the Court cannot plausibly infer that McCoy knew that Plaintiff was throwing up blood and being ignored by staff, such as Nurse Morgan, and then failed to act to ensure he received care. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper,* 910 F. 3d 1027, 1029 (7th Cir. 2018). Because McCoy cannot be held liable solely because she held a supervisory position, all claims against her are dismissed without prejudice.

The Court also dismisses any claims intended against Connie Dolce, who Plaintiff describes as a mental health defendant. Plaintiff states that "Dolce would not put [him] on call." (Doc. 23, p. 4). This statement does not state a claim for a constitutional deprivation.

To the extent Plaintiff is attempting to state a claim against Rayford for excessive force on September 28, 2023, such claim is dismissed. Rayford is not named as a defendant, and the Court will not treat parties not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

Plaintiff makes several allegations against "staff" in general. He asserts that "all staff at every department" engaged in misconduct against him, which included the denial of medical care, retaliatory placement in segregation, and subjecting him to poor living conditions. (Doc. 23, p. 2,

3). Plaintiff asserts that Warden Wills has sanctioned this conduct "as head Warden" and signed off on custom, policies, and practices that allow staff to act in underhanded and deceitful ways. (*Id.* at p. 3). Any constitutional claims asserted towards "staff" generally are dismissed. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against that individual. He does not describe the staff members or identify particular acts or omissions by any specific individuals who allegedly violated his constitutional rights. Thus, claims against staff at Menard are dismissed without prejudice.

Similarly, the allegations that Warden Wills signed off on customs, practices, and policies of misconduct are too vague to proceed. (Doc. 23, p. 2). The Court also dismisses Plaintiff's constitutional claim that Wills "sanctioned" the conditions he experienced in segregation. (*Id.* at p. 3). Plaintiff does not describe how Wills was personally involved in his placement in segregation and the denial of his property for three days. And as discussed above, Wills cannot be liable for the conduct of others based solely on his supervisory position. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Finally, the Court dismisses all claims brought against Defendants in their official capacities. Plaintiff brings his claims against Defendants in their individual and official capacities, but he only seeks monetary damages. (Doc. 23, p. 5). State officials named in their official capacities may not be sued for monetary damages in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the official capacity claims are dismissed.

## DISCUSSION

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Angie,

>    Morgan, Ahring, Edinger, Maue, and Wills for denying Plaintiff medical care for his ongoing injuries and illness.
>
> **Count 2:**    Claim against Edinger and Angie for conspiring to violate Plaintiff's Eighth Amendment right to adequate medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

Count 1 will proceed against Edinger, Angie, Morgan, Maue, Ahring, and Wills for failing to provide Plaintiff adequate medical treatment.

### Count 2

A civil conspiracy claim requires the plaintiff to identify the parties involved in the conspiracy, the general purpose, and the approximate date. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002); *Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir.1996).

Plaintiff claims that Edinger and Angie deliberately failed to obtain a medical provider for him because they were attempting to coverup the incident of excessive force that caused his injuries. (Doc. 23, p. 4). He states that for six days, under their care, he continued to be denied medical treatment. Based on these allegations, it is not "a challenge to imagine a scenario" where two staff members who are engaged in similar conduct at the same time came to a prior agreement. *See Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2023). Accordingly, Count 2 survives

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

preliminary review.

### CONTRACT AGREEMENT

Along with the First Amended Complaint, Plaintiff has included a document titled "Contract Agreement Affidavit." (Doc. 23, p. 6-7). Pursuant to the document, Plaintiff has entered into an agreement with another inmate, Bobby Ford, who has agreed to "do all the court litigation to the fullest exten[t] of this civil case as [Plaintiff's] jail house lawyer." Plaintiff asks the Court to forward a copy of all orders, motions, and filings to Bobby Ford. He also asks that Bobby Ford be allowed to participate in hearings, settlement discussions, and status conferences. Finally, Plaintiff requests that if he is owed money by the state at the conclusion of this litigation that a check be paid to himself and Bobby Ford.

Plaintiff's requests are **DENIED**. Bobby Ford may *assist* Plaintiff with prosecuting the claims in this case by providing advice, conducting research, or drafting filings. As a non-attorney, however, Ford may not represent Plaintiff or litigate this case on Plaintiff's behalf. *See* 28 U.S.C. §1654; *Ocasio v. Kartman,* 2022 WL 738679, at *1 (W.D. Wisc. Feb. 15, 2022) (citing *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (7th Cir. 1982). This means that Plaintiff must "take legal responsibility for, and must [himself] sign all papers filed in this court." *Herrera-Venegas,* 681 F. 2d at 42; FED. R. CIV. P. 11. Any documents served by this Court or opposing parties will be served only on Plaintiff. Plaintiff is free to share Court documents with Ford, and the Clerk of Court will provide Plaintiff extra copies of any document after receiving prepayment of the required fee of $.50 per page.

### MOTION TO STAY

The motion to stay the responsive deadline is **GRANTED in part.** (Doc. 25). Defendants are only required to file a responsive pleading to the First Amended Complaint and this Merit Review Order in accordance with Administrative Order 244 and the Federal Rules of Civil

Procedure.

### DISPOSITION

Pursuant to Rule 15 and after review of the proposed amended complaint pursuant to 28 U.S.C. § 1915A, the Court **GRANTS** the Motion for Leave to Amend the Complaint. (Doc. 23). The Clerk is **DIRECTED** to file the proposed amended complaint submitted to the Court on June 24, 2024, as the "First Amended Complaint." **COUNT 1** will proceed against Angie, Morgan, Ahring, Maue, Wills, and Edinger. **COUNT 2** will proceed against Angie and Edinger. All claims against Dolce, McCoy, Pierce, Loyd, Ramsey, and Hargis are **DISMISSED without prejudice**. They shall be **TERMINATED** as parties to this case.

The Clerk of Court is **DIRECTED** to serve process Edinger in accordance with the original Merit Review Order at Doc. 12. Because John Doe 1 has been identified as Edinger and is no longer named as a defendant in the First Amended Complaint, John Doe 1 is **DISMISSED without prejudice** and shall be **TERMINATED** as a party.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, defendants need only respond to the issues stated in this Merit Review Order. Defendants are **ADVISED** that the Court does not accept piecemeal answers.

**IT IS SO ORDERED.**

DATED:   July 26, 2024

    _s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**