UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DELVON BROWN,

      Plaintiff,

vs().

ANGELA WALTER,
MORGAN GIACOMO,
ANGELA AHRING,
and
KELLY MAUE,

      Defendants.

Case No. 3:24-cv-00477-GCS

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court are motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Giacomo, (Doc. 55, 56), and by Defendants Evinger, Walter, Wills, Ahring, and Maue (Doc. 59). Defendants argues that Plaintiff failed to exhaust his administrative remedies because he failed to pursue his allegations through the prison's grievance process *prior* to filing this lawsuit. Plaintiff filed an opposition to the motion. (Doc. 63). Plaintiff counters that his attempts to exhaust were thwarted by the prison.[1] Based on the following, the Court **GRANTS** the motions.

---

[1]    In his opposition, Plaintiff attaches affidavits from himself and other inmates regarding the lack of medical attention experienced at Menard Correctional Center. (Doc. 63, p. 4-11, 14). These affidavits concern merits-based issues, not issues regarding the exhaustion of administrative remedies, and thus, will not be considered.

Plaintiff Delvon Brown, an inmate with the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His original Complaint, filed on February 21, 2024, was allowed to proceed on an Eighth Amendment deliberate indifference claim for denying Plaintiff medical care for his ongoing illness, which allegedly occurred on or after September 28, 2023. (Doc. 12).

Plaintiff filed a motion for leave to file an amended complaint, (Doc. 23), which was granted on July 26, 2024. (Doc. 35). Plaintiff's amended complaint alleges that on September 28, 2023, while at Menard, he was assaulted by Correctional Officer Rayford, a member of the tactical team. (Doc. 23, p. 1). At the time he was physical attacked, Plaintiff's hands were cuffed behind his back. Plaintiff states that Rayford slammed his face repeatedly against a brick wall knocking his teeth out of his mouth. *Id.* Plaintiff did not receive proper medical attention, and from this point going forward, Plaintiff "began ingesting toxins under the roots of the teeth." *Id.* at p. 2. Plaintiff asserts that these toxins can be deadly and cause death if not caught and treated. *Id.*

On November 12, 2023, while housed in East House, Plaintiff continued to suffer from his injuries inflicted by Correctional Officer Rayford. (Doc. 23, p. 1). He was throwing up blood and losing a lot of weight "from ingesting the poison toxins" from the roots of his gums. Plaintiff states that he had previously submitted six call slips requesting medical treatment, but his requests were ignored. *Id.*

Because he complained about the lack of medical care, Plaintiff was placed in segregation in North Two Cell House, cell #645, in poor conditions. (Doc. 23, p. 3). He did not have bedding, clothes, books, a pen, paper, or mail for three days. At times, Plaintiff was not fed for days and did not have access to the mail and was prohibited from using the phone. He states that in segregation inmates are often sprayed with mace and not able to wash the mace from their bodies because staff will turn off the water to the cells. *Id.*

While in cell #645, Plaintiff continued to throw up blood. (Doc. 23, p. 3). Correctional Officer Edinger saw the blood on the floor of Plaintiff's cell. Edinger told Plaintiff that he would "get someone," but he never came back. Plaintiff also told Nurse Angie, as she was passing out medication, that he was throwing up blood and was feeling ill. Nurse Angie said she would come back to his cell, but she did not return. *Id.* Plaintiff asserts that Endinger and Angie did not seek medical assistance for him to coverup the excessive force used against him. *Id.* at p. 4. He claims that this "vendetta behavior" continued six days until he was moved to cell #843. *Id.* at p. 4. Cell #843 had a solid steel door, and Plaintiff states this cell served to isolate him even more. *Id.*

Once Plaintiff was moved to the new cell, he continued to write grievances seeking medical attention, but he did not receive a response. (Doc. 23, p. 4). Plaintiff gave three sick call slips to Nurse Morgan. Plaintiff asked her if he was going to be seen by someone because he was in pain, and she responded, "I don't make those decisions I don't even

read the sick calls." Plaintiff asserts that nurses do in fact have the authority to immediately take an inmate who is throwing up blood to the health care unit. *Id.*

On February 10, 2024, Plaintiff woke up throwing up blood, and he alerted his gallery officer, Ms. Ahring. (Doc. 23, p. 4). He was taken to the "R&C" building and placed in a cell with Sergeant Maue. Maue began aggressively asking Plaintiff why he pressed the emergency button for medical attention. Plaintiff showed Maue the blood in his paper cup and on the wall and floor of his cell. Maue said, "I see a lot of blood everywhere." Plaintiff explained that he had not received medical care after being assaulted by the tactical team in September. He told Maue that he was in a lot of pain and felt like he was slowly dying. Maue responded, "Maybe you is," and walked away from his cell without helping him obtain medical treatment.

On July 26, 2024, the Court, pursuant to the 28 U.S.C. § 1915A allowed Plaintiff to proceed on the following counts: Count 1, Eighth Amendment deliberate indifference claim against Angela Walter, Morgan Giacomo, Angela Ahring, Brian Evinger, Kelly Maue, and Anthony Wills for denying Plaintiff medical care for his ongoing injuries and illness and Count 2, Claim against Brian Evinger and Angela Walter for conspiring to violate Plaintiff's Eighth Amendment right to adequate medical care. (Doc. 35).

On May 21, 2025, the Court held a hearing on the motion, heard testimony from Menard Grievance Officer Jeffery Olson and took the mater under advisement. (Doc. 72). Thereafter, Plaintiff was allowed to supplement the record, (Doc. 73-1), and Defendant

Giacomo filed a reply to the supplement. (Doc. 77).

## FACTS[2]

The allegations/claims allowed to proceed in this case occurred between September 28, 2023, and February 21, 2024. The relevant grievance, according to Defendant Giacomo, is an emergency grievance dated January 9, 2024, # K4-0124-0273. In this grievance, Plaintiff stated: "I have been writing to see the doctor about my [rapid weight loss] for 3 months since the end of October and I still have not seen or heard from anybody." On January 17, 2024, Plaintiff's grievance was received at the Grievance Officer level. On March 11, 2024, the Grievance Officer recommended that Plaintiff's grievance be decided as resolved. On March 22, 2024, the Chief Administrative Officer ("CAO") concurred, and the grievance was returned to Brown on March 25, 2024. The Administrative Review Board ("ARB") returned this grievance without a final review on the merits for having received it on July 15, 2024, more than 30 days after the CAO's concurrence.

Another grievance Plaintiff contends is relevant to this case is emergency grievance dated January 28, 2024, # K4-0124-0634. This grievance contains claims of law

---

[2] Plaintiff's records from the ARB reveal that Plaintiff submitted four grievances to the ARB that were dated before February 21, 2024. Three of these grievances, (K4-1223-1950, dated December 6, 2023; K4-0224-0741, dated February 8, 2024; and K4-224-0994, dated February 14, 2024) pertain to disciplinary reports and are not relevant to the issues contained in the amended complaint. Another grievance, (Doc. 59-5, dated July 7, 2023) complains about conduct at another institution. As such, these grievances are not relevant to the exhaustion issue before the Court and will not be addressed.

library access and medical treatment. On January 31, 2024, the CAO deemed the grievance non-emergent. The grievance counselor received the grievance on February 2, 2024. The grievance counselor responded to the grievance on May 22, 2025. On June 2, 2025, the grievance officer recommended that Plaintiff's grievance be denied. On June 11, 2025, the CAO concurred with the grievance officer. (Doc. 73-1).

The record also reflects that Plaintiff also submitted several other grievances possibly related to the allegations in the complaint that he did not send to the ARB: (1) November 27, 2023, # K4-1123-1715;[3] (2) January 31, 2024, # K4-0224-0698;[4] (3) February 1, 2024, # K4-0224-0699;[5] (5) February 7, 2024, #K4-0224-0847;[6] (6) and February 19, 2024, # K4-224-0995.[7] (Doc. 56-2).

---

[3] This grievance contained allegations of not being seen for sick call and a missing tooth. The grievance officer responded to this grievance on November 30, 2023, and it was returned to Plaintiff on January 3, 2024.

[4] This grievance contained allegations regarding law library use, requesting a transfer, adding phone numbers, educational programs, obtaining mental health records, fear of safety, being tormented by staff, and seeing the doctor or nurse about body weakness, wheezing, pain and throwing up blood. The grievance officer responded to this grievance on February 15, 2024. The grievance was returned to Plaintiff on February 16, 2024.

[5] This grievance contained allegations concerning an incident on January 25, 2024, and wanting to see a medical doctor because he was still vomiting blood. The grievance counselor responded to the grievance on February 15, 2024. This grievance was returned to Plaintiff on February 16, 2024.

[6] This grievance contained allegations regarding staff conduct that occurred on February 1, 2024. This grievance was deemed emergent and was expedited. The grievance officer denied the grievance, and the CAO concurred on February 23, 2024. The grievance was returned to Plaintiff on February 26, 2024. (Doc. 56-3, p. 6; 59-2, p. 4).

[7] This emergency grievance contained allegations of coughing up blood, bad cramps,

Plaintiff filed suit on February 21, 2024. (Doc. 1). He filed his motion for leave to file an amended complaint on June 24, 2024, (Doc. 24), which was both granted and filed on July 26, 2024. (Doc. 35, 36).

## LEGAL STANDARDS

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

---

outside medical furlough and blood test results. On February 21, 2024, the CAO deemed it emergent. On March 12, 2024, the grievance officer found the grievance moot as it was addressed in grievances #K4-0124-0273 and K4-0224-0699. The CAO concurred on March 22, 2024.

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of)

any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The

Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled

Page **10** of **15**

on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

Defendants argue that Plaintiff did not submit a single grievance to the ARB regarding the issues of this case *prior* to filing suit, thus, he did not exhaust his administrative remedies. Specifically, Defendants maintain that while the record reflects that Plaintiff initiated the grievance process regarding the allegations in this case, Plaintiff did not submit some of the grievances for second review and that Plaintiff did not wait to complete the facility and ARB reviews before filing his case. Plaintiff counters that he did his part to exhaust his administrative remedies but that the prison hindered his process. Specifically, Plaintiff's response states: "I wrote multiple grievances during November of 2023 and by the time I filed my civil suit but Menard Officer will read your grievances and throw them away to stop you from filing your grievances in a timely

manner or they will not give you any of your legal from your personal property. . . . After I receive a response I put that said grievance in the bars to be mailed to the ARB at that point I have no power after that point it is up to the staff in Menard CC to get any and all mail to said location." (Doc. 63, p. 1, 2). Based on the following, the Court agrees with Defendants.

Plaintiff cannot sue first and exhaust later. And that is precisely what Plaintiff did here. As noted above, Plaintiff submitted grievance # K4-0124-0273 dated January 9, 2024, regarding the allegations in this case. On January 17, 2024, Plaintiff's grievance was received at the Grievance Officer level, and on March 11, 2024, the Grievance Officer recommended that Plaintiff's grievance be decided as resolved. On March 22, 2024, the CAO concurred, and the grievance was returned to Plaintiff on March 25, 2024. The ARB returned this grievance without a final review on the merits for having received it on July 15, 2024, more than 30 days after the CAO's concurrence. Plaintiff filed suit about six months after he filed this grievance and 1 month before he received a response from the grievance officer.

Next, Plaintiff contends that because he received a response denying grievance # K4-0124-0634 on June 11, 2025, almost a year and half later, demonstrates that Menard was hindering the grievance process. The Court rejects this contention. Some grievances take longer to process. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). *See also Matthews v. Pitzen*, No. 24-1358, 2024 WL 4850498, at *2 (7th Cir. Nov. 21, 2024)

("processing delays do not relieve a prisoner of the obligation to exhaust.") (citing *Ross v. Blake*, 578 U.S. 632, 638-639 (2016)). In fact, Mr. Olson, testified that this grievance was pending at the time of the hearing and that some medical treatment grievances take longer due to resources and staffing. Like the previous grievance, Plaintiff filed suit less than a month after filing this grievance on January 28, 2024.

Moreover, as to Brown's argument that his grievances were destroyed or not processed, the Court finds this argument unpersuasive.[8] The record clearly indicates that Brown was aware of the grievance procedures at Menard. The record also reflects that Brown successfully and correctly used the grievance procedures in other unrelated matters in the past. Brown likewise understood such steps when he filed his grievances with the prison and when he filed his complaint. However, the undersigned does not find persuasive Brown's argument that his grievances were destroyed or not processed. First, Brown has no evidence whatsoever to support his assertions, other than his own self-serving general affidavit in which he states that his grievances were destroyed or refused to be processed. He does not state explicitly when (dates), where or how he submitted these grievances for further review. If Brown was repeatedly interfered with by staff during the grievance process as he maintains, it stands to reason that he would have kept notes of these incidents and would have provided them to the Court for review. In fact,

---

[8] In his response, Brown submits a general affidavit titled "Affidavit of Affirmation" regarding the truth of his pleadings. In part the affidavit states: "[E]verything contained herein is true and accurate to the best of my knowledge and belief." *See* (Doc. 63, p. 12).

the Court allowed Brown to supplement the record after the Court held the hearing and Brown did not provide the Court with any notes to corroborate the existence of grievances that were apparently destroyed or not processed by Menard staff. *See* (Doc. 73).

Importantly, the record reflects that there was a period of almost five months after the initial incident relating to the allegations of this case and Plaintiff filing this lawsuit. This five-month time frame does not appear to be adequate to allow a facility to process/address any grievance thoroughly. Additionally, there is no evidence that *at the time* of the filing of the lawsuit (February 21, 2024), the facility was ignoring Plaintiff's claims or grievances or that Menard was hindering his process. In fact, the record and testimony at the hearing show that other grievances filed by Plaintiff were answered accordingly. While there appears to be a problem with Plaintiff's grievance #K4-0124-0634, proceeding through the facility process, this problem does not explain, nor does it justify prematurely filing a lawsuit prior to the completion of the facility review. Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit fully exhausting administrative remedies."). Plaintiff may refile this lawsuit.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Giacomo, (Doc. 55, 56), and by Defendants Evinger, Walter, Wills, Ahring, and Maue (Doc. 59). The Court **DISMISSES without prejudice** Plaintiff's amended complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

DATED: September 11, 2025.

Digitally signed by Judge Sison
Date: 2025.09.11 14:16:58 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**